MICHAEL J. HEYMAN
United States Attorney

SETH M. BEAUSANG
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: seth.beausang@usdoj.gov

Attorneys for Plaintiff

RECEIVED AUG 18 2025 CLERK, U.S. DISTRICT COURT ANCHORAGE, AK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> CHELSEA INN HOTEL, 3836 SPENARD ROAD, ANCHORAGE, ALASKA 99517, a/k/a, LOT(S) TEN (10) AND ELEVEN (11), BLOCK THREE (3), CONROY RUSHTON SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED UNDER PLAT NO. P-151, IN THE RECORDS OF THE ANCHORAGE RECORDING DISTRICT, THIRD JUDICIAL DISTRICT, STATE OF ALASKA, <br><br> Defendant. | No. 3:25-cv-00177-SLG <br><br> **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |

Plaintiff, United States of America, by and through counsel, alleges the following:

## I. NATURE OF THE ACTION

1. This is a civil action in rem brought to enforce the provisions of 18 U.S.C. § 985 and 21 U.S.C. § 881(a)(7) for the forfeiture of the defendant real property.

2. The defendant is real property described as the Chelsea Inn Hotel, 3836 Spenard Road, Anchorage, Alaska 99517, a/k/a, Lot(s) Ten (10) and Eleven (11), Block Three (3), Conroy Rushton Subdivision, according to the official plat thereof, filed under Plat No. P-151, in the records of the Anchorage Recording District, Third Judicial District, State of Alaska.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1345 because the United States is the plaintiff, and pursuant to § 1355(b)(1)(a) because any of the acts or omissions giving rise to the forfeiture occurred in the District of Alaska.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1395(b) because the defendant real property is located in the District of Alaska.

## III. RELEVANT FACTS

5. In December 2021, the Anchorage Police Department (APD) and the Federal Bureau of Investigation (FBI) began investigating allegations of ongoing local and interstate drug trafficking, human trafficking, wire fraud, violent person offenses and property offenses involving persons living at, working at, or frequenting two locations in Anchorage, Alaska, including at the Chelsea Inn Hotel (CIH) located at 3836 Spenard Road.

6. As a result of this investigation, there is probable cause to believe that

Chantel FIELDS, Kyoung SEO, and others known and unknown, have committed, are committing, and will continue to commit violations of federal law, including violations of 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute a Controlled Substance, namely fentanyl/heroin/methamphetamine) and/or 21 U.S.C. § 856 (Maintaining Drug-Involved Premises), and that the CIH is real property which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of these violations.

7. Chantel FIELDS, aka TELLY, (FIELDS) is known to store and distribute drugs at the CIH. FIELDS and her boyfriend Jemond TATE sell drugs from the CIH, direct customers to dealers living in the CIH, enforce drug debt repayment through threats and acts of violence, and control who is allowed to visit the CIH. FIELDS is reported to collect or enforce collection of a $20 "door fee" for people visiting the CIH for the purpose of buying drugs or prostitution. FIELDS has prior felony convictions for misconduct involving a weapon and multiple theft convictions.

8. Boren PAL, aka B or CAMBODIAN B, (PAL), has been identified by multiple cooperating witnesses (CWs) one of several drug dealers living in the CIH. PAL distributes fentanyl and methamphetamine from his room. PAL is known to switch rooms frequently, and as of June 2025 was staying in Room 231, off the lobby with a view of the front desk. CW information is that PAL has high visitor traffic. CW text contact with a known phone number for PAL in June 2025 has PAL responding affirmatively when CW requested methamphetamine and fentanyl from PAL. PAL has State of Alaska criminal history of Theft, Vehicle Theft, Violation of Conditions of Release and Assault.

9. Kyoung SEO (SEO), is an owner of the CIH, with his alleged spouse, Joo

LEE. SEO also collects and enforces the collection of the $20 "door fee" to anyone visiting the CIH for the purpose of drugs or prostitution. SEO has been reported as answering the CIH secure "door buzzer" and allowing multiple persons inside that were there to "see B", where those persons would make short duration visits to PAL's room in open view of the desk where SEO sits. Prior search warrant services at the CIH have found the extent of business records used by SEO include a spiral notebook with room numbers and amounts owed, with room cards that indicate rental occupancy by street names only.

10. On October 25, 2020, an APD officer was acting in an undercover capacity, posing as a homeless drug user, conducting surveillance at the CIH, in anticipation of search warrant services to occur in relation to a murder of Duane FIELDS at the CIH four days earlier. Chantel FIELDS is the daughter of Duane FIELDS.

11. The undercover APD officer had around five hours of observations, with a view of the main parking lot to the east of the building, and a partial view of the north lot where there were exterior stairs, then inside the lobby. There was a white Durango on jackstands in the lot, with a male later identified as Javarious WILLIAMS (J. WILLIAMS) loitering near the main door and north end of hotel, scanning and working his phone constantly.

12. Any time a person approached the lot he would move towards them. J. WILLIAMS was wearing a black backpack with vertical red markings. J. WILLIAMS consistently stayed at the rear of white Durango, opening and closing rear hatch, greeting and appearing to make exchanges with 3-4 persons approaching on foot and leaving quickly. J. WILLIAMS was also observed getting in and out of the back seats of vehicles

arriving in the parking lot, with money being seen once during these exchanges. In the lobby of the hotel, the undercover APD officer observed frequent foot traffic coming into the hotel and entering different rooms, including 222 and 229, while SEO was at the desk.

13. J. WILLIAMS was observed coming to and from behind the front desk, in and out of 222 and 229 several times, addressing SEO by name. J. WILLIAMS confronted the undercover APD officer in the lobby twice, appearing to represent the hotel by attempting to eject the officer. When the undercover APD officer asked to stay inside due to the weather, J. WILLIAMS deferred to SEO, who allowed the officer to stay.

14. Two short duration visitors were seen carrying electronics and computer monitors to 229 and leaving without them. All of the persons arriving and leaving for their short visits were generally disheveled in appearance, with varying degrees of skin pock marks and carrying themselves in a manner that was consistent with regular drug users. SEO was observed watching this activity without question. Based on the undercover APD officer's training and experience and previous recognition in state and federal court as an expert in drug trafficking recognition, the above actions, including the use of lookouts, short visits, heavy foot traffic, hand to hand exchanges and apparent reception of common street valued electronics strongly indicated drug trafficking activity.

15. On February 2, 2025, FBI conducted a controlled purchase of fentanyl from subjects inside the CIH, while under audio and video surveillance. A confidential human source (CW11) entered the CIH with over $600 in prerecorded FBI buy money visible in CW11's hand, asking to see moniker BOOG, who was allegedly a boyfriend of FIELDS'. Jason NOLLNER, aka SKATEBOARD (NOLLNER) and moniker SAINT demanded the

*U.S. v. CHELSEA INN HOTEL, et al.,*
VERIFIED COMPLAINT FOR FORFEITURE IN REM

5

$20 door charge from CW11, which was paid. Moniker FLEX exited room 222 (aka the "lounge" or "office") and told CW11 BOOG was not available. CW11 was approached in the lobby by D'Angelo BARLOW, aka DLO (BARLOW) with a handgun placed in CW11's stomach, and the money taken by BARLOW and monikers JUNIOR and ZAY, who were present in the lobby. BARLOW had CW11 follow him downstairs to OREO's room (unknown number), where FLEX, BARLOW and moniker OREO went inside briefly. Then BARLOW had CW11 follow him upstairs to room 335, where BARLOW provided a small amount of fentanyl powder to CW11 wrapped in foil. CW11 then left the CIH and turned over the fentanyl to law enforcement.

16. On February 8, 2025, APD served State of Alaska search warrant 3AN-25-459-SW at the CIH, for the business and several rooms. When uniformed APD officers with police vehicles with lights activated approached the front of the hotel and announced their presence, several persons were observed exiting windows on the opposite side of the hotel and running away.

17. At the front door, multiple persons were seen running through the hotel after police announced their presence, including a security guard wearing a "SECURITY" vest.

18. After officers made entry, FIELDS was present and told officers initially that she didn't have any keys for any rooms, but when officers said they would start breaking doors down, she produced keys. Among items of evidentiary value seized were: nine firearms, hundreds of rounds of ammunition, the hotel DVR surveillance system, approximately 440 grams of suspected cocaine, approximately 10 grams of suspected crack cocaine, approximately 53 grams of suspected psilocybin mushrooms, approximately 736

grams of suspected methamphetamine, approximately 110 suspected fentanyl pills, and over $2,800 in currency suspected to be proceeds of drug trafficking.

19. The only business records in relation to a hotel operation that could be found were at the front desk, consisting of a spiral bound lined notebook with a list of rooms and amounts owed for each room, with amounts crossed off or added. No names were in the book. Room cards didn't have copies of ID cards and were sparse of identifying information, with most having just street names on them – e.g. – NIKE, and B.

20. A review of February 2025 interior surveillance video that had been seized and downloaded via search warrant showed multiple instances of subjects openly carrying firearms in their hands or waistbands in the lobby, and going into room 222, reported by CWs as the "staff lounge" or "office." One example was an unknown subject carrying two firearms and placing them on the counter in front of FIELDS, while FIELDS appeared to run a credit card with the two handguns in front of her.

21. On June 8, 2025, APD officers and detectives responded to the CIH for reports of a stabbing resulting in the victim dying. The victim was Michael KASKEY, aka NIKE (KASKEY). The stabbing occurred inside the main entry door of the CIH. A suspect was arrested and charged with Murder. Interviews with witnesses consistently reported that the dispute started over KASKEY enforcing the $20 door charge for entry.

22. FIELDS was present and provided a statement to APD officers that KASKEY was responsible for collecting the $20 door charge that the owner wanted enforced to "keep homeless people out", and that that she heard the disturbance start because "Taci", known to investigators as Taci GEE (GEE), was trying to push the suspect

U.S. v. CHELSEA INN HOTEL, et al.,
VERIFIED COMPLAINT FOR FORFEITURE IN REM
7

Case 3:25-cv-00177-SLG    Document 1    Filed 08/18/25    Page 7 of 16

out the door when the fight started. Investigators are aware of reporting from CW10 and CW9 that GEE is one of PAL's girlfriends and sells his drugs for him when PAL is not available.

23. On June 25, 2025, members of Anchorage FBI Violent Crime (VC) squad and assisting Agents/Task Force Officers (TFOs), conducted a controlled drug purchase operation originating from the CIH, Anchorage, Alaska, and ultimately occurring in a vehicle on Greenland Drive south of Spenard Road. CW14 provided information to investigators that CW14 could purchase fentanyl powder from Robert BEAL, who resided at the CIH with his girlfriend, Kaytreana GREEN. CW14 reported making approximately ten previous purchases from BEAL, all from the CIH, with two of those transactions occurring in BEAL's room. CW14 described BEAL's room as being inside the CIH, 3rd floor, turn right, second door on the right. CW14 said that a $20 door fee was collected by different people, included the owner Kyoung SEO, and that BEAL drove a gold Chevrolet pickup. Research showed that GREEN had a federal warrant for her arrest for distribution of methamphetamine.

24. CW14 provided the phone number for BEAL as 907-xxx-xxxx. A search of an APD database showed that BEAL provided that number when he was arrested for DUI in January of 2024. CW14 made phone contact with BEAL, where BEAL told CW14 to meet at the Circle K gas station at 3727 Spenard Road. After the call was placed surveillance observed a gold pickup leave the parking lot of the CIH and go east on Spenard Road towards the Circle K. CW14 parked at the Circle K and went to where BEAL and GREEN were parked in the gold pickup on Greenland Drive down the street from the Circle

U.S. v. CHELSEA INN HOTEL, et al.,
VERIFIED COMPLAINT FOR FORFEITURE IN REM
8

K. CW14 entered BEAL's vehicle and exchanged $600 in prerecorded buy money for two small mini-ziplock baggies of an off-white substance. CW14 exited the vehicle and left the area, turning the baggies over to investigators. Both baggies presumptively tested positive for fentanyl, using a Tru-Narc device. Weight of the substances with the original mini-zip packaging was 2.1 grams. The baggies were entered into FBI evidence.

25. On June 27, 2025, CW9 made text contact with PAL, requesting fentanyl and methamphetamine. CW9 had made multiple purchases from PAL in the past from inside the CIH. CW9 also reported that an entry fee was required to enter the CIH if you didn't have a room there. SEO, FIELDS, or whoever was told to watch the door (by FIELDS) collected the $20 fee.

26. While under audio and video surveillance by the FBI, CW9 approached the front door of the CIH, which was locked. Justin KENNEDY (KENNEDY) looked out the lobby window and CW9 told KENNEDY they were there to see B (PAL). KENNEDY opened the front door, turning away with his open right hand stretched behind him but not saying anything. CW9 placed $20 in KENNEDY's hand and asked if B was in his room. KENNEDY said he thought so, but might be asleep.

27. CW9 was unsuccessful in making contact with PAL, but later in the evening PAL returned the text contact that was requesting controlled substances with "yes". KENNEDY was known to law enforcement as a felon with multiple convictions that include drug trafficking. KENNEDY has been observed acting as a "lookout" multiple times outside the CIH, circling the parking lot and standing by the front door, looking out for law enforcement. This has been corroborated by multiple CWs reporting the same.

CW9 further reported to law enforcement that the 3rd floor of the CIH was reserved for drug users, lower-level dealers and prostitution, with users frequently laying in the hallway, and some rooms remaining unlocked for those activities. CW10 corroborated this reporting.

28. On June 27, 2025, CW10, while under video and audio surveillance by the FBI, approached the front door of the CIH and met a friend in the parking lot. The clearly stated the intent of the friend's visit was to buy controlled substances inside the CIH and CW10 was assisting the friend in gaining access. CW10 used the door buzzer, which was answered by SEO. CW10 entered and approached the front desk where SEO was standing with an outstretched hand, where CW10 placed the $20 entry fee into SEO's hand, who placed the $20 in his pocket. With the entry fee paid, the friend accessed the CIH and CW10 exited.

29. CW10 further reported to law enforcement that the 3rd floor of the CIH was reserved for drug users, lower level dealers and prostitution, with users frequently laying in the hallway, and some rooms remaining unlocked for those activities. CW9 corroborated this reporting. CW10 also provided information that the CIH is primarily used for drug and human trafficking, but occasionally a legitimate customer would book through Expedia. CW10 was aware of two Expedia customers ever staying at the CIH, and those rooms were generally cleaned up especially for those customers.

30. Expedia records appear to show that since 2019, SEO received $42,092.61 from Expedia for CIH bookings, with no payments since December 2024.

31. Chugach Electric records for the CIH appear to show that the CIH has an

average monthly electric bill of $1,400, although in April 2025 the bill was $2,775. While the CIH is the service address, the billing address is the residence of SEO and LEE.

32. In 2025, CW5 was employed by the CIH as security. During that time CW5 reported multiple instances of observing people entering the CIH and paying the $20 door fee to SEO during daytime hours, and FIELDS during evening hours. CW5 said that the only reason for people to enter the CIH was to buy drugs, as people would have short duration stays after visiting rooms known to be occupied by drug dealers. CW5 saw PAL interacting with SEO frequently, and saw PAL pay rent in cash more than once. CW5 characterized the CIH not as a hotel, but as a drug establishment masquerading as a hotel. CW5 stated that everyone that lives in the CIH either sells or uses drugs.

33. In 2024, CW15 provided information that FIELDS was "in charge" at the CIH, facilitating and protecting drug trafficking at the hotel. CW15 also said that SEO was at the hotel most days during the daytime, when open air activity was less in the lobby area, but the foot traffic of short duration visitors remained the same, with drug users being admitted, paying the $20 fee, then going to rooms known to be occupied by drug dealers, with PAL mentioned specifically.

34. A review of APD calls for service at the CIH found around 1400 responses to the CIH from January 2020 through May 2025, not including traffic stops initiated from the CIH, nearby incidents, and undercover operations. Those calls included the following classifications:

- 31 drug related
- 86 warrant services

U.S. v. CHELSEA INN HOTEL, et al.,
VERIFIED COMPLAINT FOR FORFEITURE IN REM
11

- 83 medical calls, most of which were drug overdoses
- 11 misconduct involving weapons
- 111 disturbances
- 13 disturbances involving weapons
- 51 assaults
- 6 stolen vehicles
- 10 calls for people unconscious in vehicles
- 3 homicides

35. A review of public records and Department of Labor records showed that SEO and JOO LEE appeared to own K and J Enterprises. Labor records indicate that K and J Enterprises reported paying FIELDS from at least 2020 salary ranging from $2,730 to $8,100 quarterly, with the last three quarters being $8,100.

36. Public real estate records show that SEO and JOO LEE are listed as owners of the CIH through a tenancy by the entirety.

37. Public records show that Commonwealth Business Bank, 3435 Wilshire Blvd, Ste 700, Los Angeles CA 90010, has a recorded lien/deed of trust on the CIH.

38. CW5 was a cooperating witness who worked at the CHELSEA INN as "security". CW5 provided information that has been independently corroborated by law enforcement.

39. CW9 was a paid informant that provided information in 2025 to the FBI about multiple drug traffickers in the CHELSEA INN whose activities were managed by

FIELDS, with door charges ordered by SEO and FIELDS. CW9 had access to PAL, BEAL, and KENNEDY, another "security" person at the hotel that took the door charges.

40. CW10 was a paid informant for the FBI that provided information in 2025 to the FBI about multiple drug traffickers in the CHELSEA INN whose activities were managed by FIELDS, with door charges ordered by SEO and FIELDS. CW10 had access to PAL, KENNEDY and others yet unidentified. CW10's information was corroborated by law enforcement. CW10 was closed as an informant for the FBI after being charged with Theft and Misconduct Involving a Controlled Substance in an unrelated case.

41. CW11 was a paid informant for the FBI that provided information in 2024-2025 to the FBI about drug trafficking in the CHELSEA INN, specifically about SEO being present when drugs were present, collection of the door charge for visitors seeking drugs, FIELDS managing the drug traffickers, and monikers SKATEBOARD, NIKE, DLO, B (PAL) selling drugs openly in the hotel. Most of CW11's information was corroborated by the FBI. In February 2025, CW11 conducted a controlled buy of fentanyl from DLO in the CHELSEA INN, where CW11 was also allegedly robbed at gunpoint of most of the prerecorded FBI buy money.

42. CW14 was an informant for the FBI providing information in exchange for possible mitigation of federal charges. CW14 had direct access to BEAL and Kaytreana GREEN (GREEN) for the purposes of purchasing fentanyl from BEAL in the CHELSEA INN and the CHELSEA INN parking lot. CW14's information has been corroborated by the FBI.

43. CW15 was a cooperating witness for the FBI providing information for

*U.S. v. CHELSEA INN HOTEL, et al.,*
VERIFIED COMPLAINT FOR FORFEITURE IN REM
13

revenge against FIELDS. CW15 provided information about drug trafficking from multiple sources inside the CHELSEA INN, including FIELDS, PAL, and others yet to be identified. CW15's information was corroborated by the FBI. Within the preceding ten years, CW15 had convictions for misdemeanor assault and violating conditions of release.

44. The defendant is real property that is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute a Controlled Substance, namely fentanyl/heroin/methamphetamine) and 21 U.S.C. § 856 (Maintaining Drug-Involved Premises).

45. The defendant is therefore real property that is subject to forfeiture pursuant to 18 U.S.C. § 985 and 21 U.S.C. § 881(a)(7).

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

U.S. v. CHELSEA INN HOTEL, et al.,
VERIFIED COMPLAINT FOR FORFEITURE IN REM
14

Case 3:25-cv-00177-SLG    Document 1    Filed 08/18/25    Page 14 of 16

## IV. CLAIM FOR RELIEF

WHEREFORE, Plaintiff United States of America prays that:

A.    That due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

B.    That judgment be entered declaring Defendant in rem be forfeited to the United States of America for disposition according to law, and

C.    For such relief as this Court may deem just and proper, together with the costs and disbursements of this action.

RESPECTFULLY SUBMITTED this 14 day of August 2025, in Anchorage, Alaska.

MICHAEL J. HEYMAN
United States Attorney

s/ Seth M. Beausang
SETH M. BEAUSANG
Assistant U.S. Attorney
United States of America

## VERIFICATION

I, Seth McMillan, hereby verify and declare under the penalty of perjury that I am employed as a Task Force Officer with the Federal Bureau of Investigation, that I have read the foregoing Verified Complaint for Forfeiture In Rem and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my knowledge and belief. The sources of my knowledge and information and the grounds for my belief include official files and records of the United States, publicly available files and historical information, files and records compiled by local and state law enforcement agencies, information supplied to me by other law enforcement officers and other witnesses, as well as my investigation in this case, together with others, as well as my training and experience.

Seth McMillan
Task Force Officer
Federal Bureau of Investigation

Declarations have the same legal force as affidavits. 28 U.S.C. § 1746